**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

TERI AULESTIA, Mother and Next )
Friend of KATI HIATT, )
                                                )   Case No. 14-CV-769-JED-FHM
            Plaintiff, )
                                                )
v. )
                                                )
NUTEK DISPOSABLES, INC., )
                                                )
            Defendant. )

**OPINION AND ORDER**

**I.    Motion to Dismiss for Failure to State a Claim**

In this diversity action, the plaintiff alleges that Kati Hiatt "has suffered serious, painful and permanent injuries" as a result of the use of baby wipes that were "defective and unreasonably dangerous." (Doc. 2-2 at ¶ 3). As alleged in the Petition, Ms. Hiatt was 18 years old, "with a normal life expectancy of 63.9 years, according to the United States Life Tables," and plaintiff "has incurred and will incur expenses for medical care and attention" for serious, painful and permanent injuries suffered by Ms. Hiatt as a result of the baby wipes. (*Id.* at ¶¶ 2-4, 6). Plaintiff alleges that the defendant's "manufacture and distribution of the defective and unreasonably dangerous baby wipes was in reckless disregard of Plaintiff, her child, and others." (*Id.* at ¶ 5).

The defendant, Nutek Disposables, Inc. (Nutek), first moves under Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's pleading for failure to state a claim. Namely, Nutek argues that the plaintiff has not stated a claim for either strict product liability or breach of implied warranty of merchantability, because the plaintiff has not identified a specific manufacturing defect that is alleged to have resulted in harm to the plaintiff.

In considering a motion under Rule 12(b)(6), the Court must determine whether the pleader has stated a claim upon which relief may be granted. A pleading must contain enough "facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A court must accept all the well-pleaded allegations as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *Id.*

Plaintiff's pleading plainly alleges that Nutek manufactured and distributed defective baby wipes, and she asserts that her daughter was seriously injured from use of the wipes. (Doc. 2-2 at ¶¶ 2-5). While Nutek argues that plaintiff has not provided sufficient information of the specific defect alleged, the Court notes that the alleged lack of detail did not prevent Nutek from possessing sufficient information upon which to seek centralization of this case and consolidation for pretrial matters with other cases based upon factual similarity. Before the United States Judicial Panel on Multidistrict Litigation (JPML), Nutek moved to transfer this action, as well as others, to the Eastern District of New York, for coordinated or consolidated pretrial proceedings. (*See* MDL No. 2605, Doc. 24, attached as Doc. 13-2 herein).

In its amended motion to the JPML, Nutek represented that, after learning that baby wipes it manufactured were potentially contaminated with the bacteria *Burkholderia cepacia*, it issued a voluntary recall in October 2014, and a number of lawsuits followed. Nutek stated that this case is one of a number of cases that "were filed in courts across the country and in varying contexts, but the basic allegations were that Defendants designed, manufactured and sold contaminated baby wipes and Plaintiffs suffered some type of injury as a result." (Doc. 13-2 at

10 of 103).[1] The plaintiff's petition in this case was attached in support of Nutek's motion to the JPML. (*Id.* at 96 of 103). According to Nutek, the three actions that remained at the time it filed its amended motion with the JPML – which included this case – "present a classic case for coordination or consolidation for pretrial proceedings [because they involved] multiple claims pending throughout the country which arise from the exact same alleged actions against one or more common defendants and that allege virtually identical legal violations." (*Id.* at 10-11 of 103). Nutek specifically alleged that "[d]iscovery in each action will substantially overlap, focusing on Defendants' manufacturing practices and procedures and the potential health effects of exposure to *Burkholderia cepacia*." (*Id.* at 4 of 103).

The JPML denied Nutek's motion to centralize pretrial proceedings for all three cases in the Eastern District of New York. *See In re Nutek Baby Wipes Products Liability Litig.*, 96 F. Supp. 3d 1373 (J.P.M.L. 2015). In doing so, the court noted that the three "actions share some common factual questions regarding the cause or causes of the potential contamination of certain Nutek disposable wipes with the bacteria *Burkholderia cepacia*. Nutek announced the nationwide voluntary product recall on October 25, 2014. We are not convinced, though, that these common issues alone are sufficiently complex or numerous to warrant the creation of an MDL." *Id.* at 1373.

The plaintiff's pleading contains sufficient allegations to state a plausible claim against Nutek based upon allegedly defective baby wipes that it manufactures and distributes, and it is clear that Nutek has had for some time sufficient notice of the specific basis for the plaintiff's allegations. The motion to dismiss for failure to state a claim is **denied**.

---

[1]  In addition to Nutek, related entities First Quality Enterprises, Inc. and First Quality Consumer Products LLC were also named defendants who moved the JPML to consolidate.

**II.     Capacity to Sue / Real Party in Interest**

As part of its Rule 12(b)(6) motion for failure to state a claim, Nutek argues that plaintiff has not made a showing that she suffered harm as a result of the wipes, and her daughter, who is alleged to have been injured, was 18 years old at the time of her injuries. Nutek acknowledges that Fed. R. Civ. P. 17(c)(2) provides that "[a] minor or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem," but asserts that the Petition does not allege that Ms. Hiatt lacks capacity to sue. (Doc. 13 at 14 of 33). It is not clear from the Petition that plaintiff is or is not the real party in interest or that she has or does not have capacity to sue on behalf of her daughter.

While there is authority for the proposition that a plaintiff's lack of capacity to sue or a failure to name a real party in interest may support dismissal, where the factual record is not sufficiently developed, or it is not clear that a party lacks the capacity to sue or the ability to substitute a real party in interest, dismissal is improper. *See, e.g.*, *Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004) (reversing dismissal of suit brought in name of decedent rather than a plaintiff with capacity to sue); *Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 916-17 (D. Kan. 1997) (insufficient factual development regarding real party in interest prevented dismissal on that ground); Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action . . . [a]fter [which] the action proceeds as if it had been originally commenced by the real party in interest."). "Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application." *Esposito*, 368 F.3d at 1278.

In response to the dismissal motion, plaintiff submitted an affidavit in which she avers that her daughter, Ms. Hiatt, "was born developmentally disabled" and has "a mental age of less than 1 year." (Doc. 15-1 at ¶ 2). The Court considers that sufficient at this point to permit this action to be prosecuted by plaintiff, as the next friend of her daughter, under Fed. R. Civ. P. 17(c)(2), which expressly provides that "an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." Nutek's request for dismissal on this basis is thus **denied**.

### III.     Motion to Dismiss for Improper Venue

Nutek alternatively seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(3), which provides that a party may challenge improper venue by motion. Nutek argues that venue is improper because, according to Nutek, this Court cannot exercise general or specific jurisdiction over Nutek. Although raised as a venue motion under Fed. R. Civ. P. 12(b)(3), rather than a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2), Nutek asserts that the procedure is essentially the same on a motion for venue premised upon a purported lack of personal jurisdiction.

Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over the defendants. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, ... the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id*. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id*. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling

case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. *FDIC v. Oaklawn Apts.*, 959 F.2d 170, 174 (10th Cir. 1992). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor, and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. *Id*.

For a court to exercise personal jurisdiction over a nonresident defendant, the plaintiff must demonstrate the existence of facts satisfying both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1416 (10th Cir. 1988)); *see Niemi*, 770 F.3d at 1348; *see also* 12 *Okla. Stat.* § 2004(F).

"In order to evaluate whether the exercise of personal jurisdiction comports with due process," the court "must first assess whether 'the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there.'" *Niemi*, 770 F.3d at 1348 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010)). If a defendant has minimum contacts with the forum state, the court then determines "whether the exercise of personal jurisdiction over [that] defendant offends traditional notions of fair play and substantial justice." *Id.*

The minimum contacts standard may be satisfied by showing general or specific jurisdiction. *Id.* A court "may, consistent with due process, assert specific jurisdiction over a

6

nonresident defendant 'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King*, 471 U.S. at 472). When examining specific personal jurisdiction, the courts often apply slightly differing analyses in tort cases and contract cases. *See Niemi*, 770 F.3d at 1348 *(*citing *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008)). In tort cases, the courts generally apply a "purposeful direction" test, whereas a "purposeful availment" test is used in contract cases. *See id.*; *see also Dudnikov*, 514 F.3d at 1071 ("In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state"). In a tort suit, "'purposeful direction' has three elements: (a) an intentional action ... that was (b) expressly aimed at the forum state ... with (c) knowledge that the brunt of the injury would be felt in the forum state.'" *Niemi*, 770 F.3d at 1348 (quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1264-65 (10th Cir. 2013)).

When a plaintiff's claim does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984). Because the Court finds that plaintiff has made a prima facie showing that the exercise of specific jurisdiction over Nutek is appropriate under a minimum contacts analysis and that such exercise comports with traditional notions of fair play and substantial justice, the Court need not address general jurisdiction.

Where, as here, a product alleged to have caused injury has been placed into the "stream of commerce" by a manufacturer, courts have grappled with the specific standard to be applied in determining whether the manufacturer has purposefully directed its activities to the forum so as to be subject to jurisdiction there. In *World–Wide Volkswagen Corp. v. Woodson*, the Supreme Court stated that, "if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." 444 U.S. 286, 297 (1980). The Court also held that the "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98.

In a subsequent plurality opinion, four justices of the Court indicated that placing a product into the "stream of commerce," without more, is insufficient to support the exercise of personal jurisdiction wherever that product may end up. *See Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.,* 480 U.S. 102, 112 (1987) (opinion of O'Connor, J.). However, those justices also stated that placing a product into the "stream of commerce," combined with "additional conduct of the defendant," such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" may support an assertion of specific jurisdiction against a foreign manufacturer. *See id.*

Here, Nutek submitted a Declaration establishing that Nutek, a Pennsylvania corporation that operates in that state, is not incorporated in Oklahoma, has no office or principal place of business in Oklahoma, is not registered to do business in Oklahoma, has no registered service agent in Oklahoma, and does not pay Oklahoma taxes. (*See* Doc. 13-3). In addition, Nutek has established that the disposable wipes at issue in this case were manufactured at Nutek's manufacturing plant in McElhattan, Pennsylvania. (*Id.*). Nutek apparently wishes the analysis to end at its manufacturing plant, but the Court must also consider under the applicable law whether Nutek purposefully directed conduct such that an exercise of specific jurisdiction is appropriate in this state. For example, Nutek's brief provides no information or argument that is relevant to the issue of how its product ended up in Oklahoma, which is clearly a relevant consideration under *World Wide Volkswagen* and *Asahi Metal*.

Plaintiff also submitted an affidavit, in which she stated that she purchased Simply Right baby wipes from a Sam's Club location in Tulsa, Oklahoma. (Doc. 15-1 at ¶ 3). She was notified by Sam's Club in October, 2014 that the baby wipes it sold were potentially infected with a bacterium. (*Id.* at ¶ 4). Plaintiff's daughter "got sick and this bacterium was identified by the medical care providers as being the same as that referenced in the [Sam's Club] communications." (*Id.* at ¶ 5). She attached to her affidavit printouts from Nutek's website, on which Nutek issued a press release regarding its "nationwide voluntary product recall at the retail level of all lots of baby wipes that it manufactured under the brand names Cuties, Diapers.com, Femtex, Fred's, Kidgets, Member's Mark, Simply Right, Sunny Smiles, Tender Touch, and Well Beginnings, because some packages may contain bacteria." (Doc. 15-1 at 4 of 13). Nutek also indicated that "[t]hese wipes were *distributed by Nutek* prior to October 21, 2014 to the following retail stores: Walgreens, Sam's Club, Family Dollar, Fred's, and Diapers.com." (*Id.*)

9

(emphasis added).[2]  Nutek further represented in the press release that it has not identified the cause of the problem, but "has stopped shipping baby wipes manufactured at the facility" in the interim.  (Doc. 15-1 at 4 of 13).

Based on the foregoing, Nutek not only manufactured, but also distributed, its potentially infected baby wipes, including its Simply Right wipes, to stores, including Sam's Club, nationwide.  At this juncture, the Court finds that the plaintiff has satisfied her burden to make a prima facie showing that the exercise of specific jurisdiction over Nutek is proper and comports with traditional notions of fair play and substantial justice.  Consistent with the principles in *World Wide Volkswagen* and its progeny, the facts show that Nutek not only placed its baby wipes in the "stream of commerce," but also specifically directed distribution activities to several retailers, including Sam's Club stores, several of which are in Oklahoma, and plaintiff has sufficiently alleged that her daughter's injuries arose out of that conduct.  Nutek has not denied that it distributed its wipes to Sam's Club in Tulsa, Oklahoma, and it has not otherwise provided any information to counter plaintiff's prima facie showing.  Hence, the motion to dismiss for improper venue is **denied**.

## IV.     Alternative Motion to Transfer to the Eastern District of New York

Nutek alternatively moves under 28 U.S.C. § 1404(a) to transfer venue to the Eastern District of New York.  The statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Congress enacted the statute to allow "easy change of venue within a unified federal system."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d

---

[2]     These facts were expressly noted in the JPML's decision in *In re Nutek*, 96 F. Supp. 3d at 1373, n.2.

10

1509, 1515 (10th Cir. 1991) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)). The party moving to transfer a case pursuant to § 1404(a) has the burden to establish that the suit should be transferred; that is, that the existing forum is inconvenient. *Wm. A. Smith Contracting Co., Inc. v. Travelers Indemnity Co.*, 467 F.2d 662, 664 (10th Cir. 1972); *Chrysler*, 928 F.2d at 1515; *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992).

The transfer of venue statute, § 1404(a), "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Chrysler*, 928 F. 2d at 1516. The discretionary factors considered include: plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical. *Id.* (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *Bartile Roofs*, 618 F.3d at 1167-68.

A court should not transfer venue merely to shift the inconvenience from one party to another. *Bartile Roofs*, 618 F.3d at 1167. The Tenth Circuit has determined that, "unless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *Wm. A. Smith Contracting*, 467 F.2d at 664); *see also Bartile Roofs*, 618 F.3d at 1168.

Nutek argues that a balancing of the factors weighs in favor of transfer of this action to the Eastern District of New York.  Specifically, Nutek notes that another action against Nutek is pending in that district and is closer to Nutek's manufacturing plant, which is in McElhattan, Pennsylvania, and that "Nutek will be burdened by the unavailability and cost of having witnesses attend proceedings in Oklahoma." (Doc. 13 at 23).  Nutek further argues that most of its employees who may be witnesses – none of whom are identified specifically – live near its manufacturing plant in McElhattan, Pennsylvania, such that it will face a "monumental burden in coordinating the absences of its employees." (*Id.*).  At the same time, Nutek notes that those witnesses would have to travel significantly farther than the 100 miles contemplated by the subpoena rule, Fed. R. Civ. P. 45.  (*Id.* at 24).  Nutek does not argue that any of its unnamed employees who may be witnesses would be unwilling to voluntarily appear here for trial.  To the extent that any such witnesses were unwilling to appear without the compulsion of a subpoena, the Court notes that McElhattan, Pennsylvania is also more than 100 miles from the Eastern District of New York, to which Nutek seeks to transfer this action.

The plaintiff has provided information that she is a resident of Tulsa County, Oklahoma, and her daughter, who was allegedly injured by Nutek's baby wipes, was born developmentally disabled and has the mental age of less than one year. (Doc. 15-1 at 1).  Plaintiff asserts that she purchased Nutek-manufactured and distributed wipes at Sam's Club in Tulsa, Oklahoma on several occasions, and her daughter "got sick and this bacterium was identified by the medical care providers as being the same as that referenced" in the information that was provided to her by Sam's Club in October, 2014.  (*Id.*).  Plaintiff also asserts that her daughter was injured in Oklahoma and that her medical care is in Oklahoma. (Doc. 15 at 6).

While Nutek is quite dismissive of the burden to plaintiff and her daughter to litigate in the Eastern District of New York rather than plaintiff's chosen forum in Oklahoma, the Court is not. Nutek will have some expense associated with its employees attending any trial of this matter, but litigating in New York would likewise be expensive to the plaintiff. Plaintiff would certainly be at a disadvantage if forced to compel medical personnel from Oklahoma to New York for trial, and it would be burdensome and costly to plaintiff to travel with her allegedly severely disabled daughter to New York for pretrial and trial proceedings. The Court concludes that the plaintiff's choice of forum under these facts must be given substantial weight and should not be disturbed. *See Bartile Roofs*, 618 F.3d at 1168. The motion to transfer will be **denied**.

## V.     No Stay is Appropriate

As an additional alternative, Nutek requested that the Court stay this matter "until the JPML has issued a ruling on Nutek's MDL Motion to transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings." (Doc. 13 at 31-32). Because the JPML has since ruled and denied the MDL Motion, no stay of these proceedings is appropriate. *See In re Nutek*, 96 F. Supp. 2d at 1373-74.

## VI.    Motion to Strike

Nutek moved to strike the plaintiff's affidavit, which was submitted in response to Nutek's alternative motions. Nutek notes that an affidavit is ordinarily not admissible in determining a motion pursuant to Fed. R. Civ. P. 12(b)(6). However, the Court did not rely upon the affidavit in determining that the Petition contained sufficient facts to state a plausible claim against Nutek for a manufacturing defect. Nutek also raised grounds, including capacity and real party in interest grounds, which are not ordinary Rule 12(b)(6) grounds for dismissal, and asserted an absence of personal jurisdiction over Nutek. In support of its jurisdiction and venue

motions, Nutek itself submitted an employee's Declaration regarding venue-related facts. (*See* Doc. 13-3). The Court finds it appropriate to consider the plaintiff's affidavit on those issues.

Nutek also asserts that plaintiff's reference to and attachment of Nutek's press release should be stricken as "not relevant" under Fed. R. Evid. 402 and as "nothing more than inadmissible hearsay" under Fed. R. Evid. 802. The Court disagrees, as Nutek's press release contains information – including the brand names of the potentially infected baby wipes, the retail locations at which such wipes were sold, and the fact that Nutek manufactured and distributed those wipes to those locations – which is obviously relevant to the issues presented by Nutek's venue motions. With respect to Nutek's hearsay objection, plaintiff contends that Nutek's own statements in the press release are, by definition, *not* hearsay under Fed. R. Evid. 801(d)(2). Nutek did not file any reply or otherwise supply any legal authority to show that the statements in the press release are hearsay that must be excluded. The motion to strike will be **denied**.

### VII. Conclusion

Nutek's alternative motions to dismiss (Doc. 13), to transfer (Doc. 14), and to stay (Doc. 14) are hereby **denied**. Nutek's motion to strike (Doc. 18) is likewise **denied**. The parties shall file a Joint Status Report within 21 days.

SO ORDERED this 24th day of March, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE